Case: 1:12-cv-00078-WAL-GWC   Document #: 54   Filed: 07/09/14   Page 1 of 12

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| SHIRMEL GUMBS-HEYLIGER, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 2012-078 |
| CMW & ASSOCIATES CORPORATION, ) | |
| Defendant. ) | |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
**Emily A. Shoup, Esq.,**
St. Croix, U.S.V.I.
  *For the Plaintiff*

**Michael J. Sanford, Esq.,**
St. Croix, U.S.V.I.
  *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Defendant CMW & Associates Corporation's ("Defendant") Motion for Summary Judgment. (Dkt. No. 41). For the reasons that follow, the Court will deny Defendant's Motion.

## I.   BACKGROUND

Plaintiff Shirmel Gumbs-Heyliger ("Plaintiff") worked as a Family Assistance Center Coordinator ("FAC Coordinator") with Defendant, assigned to the National Guard Family Assistance Center ("FAC") on St. Croix, Virgin Islands. (Dkt. No. 1). The Army National Guard provides FACs to aid service members and their families when service members are deployed. Defendant was under contract to run the St. Croix center. (Dkt. No. 1).

Plaintiff previously held the same FAC Coordinator job with a different company, and commenced working for Defendant in April of 2011 when Defendant contracted with the National Guard. (Dkt. No. 42 at 2). Plaintiff was terminated after eight months of employment with Defendant, and alleges that her termination was "wrongful and in violation of the Virgin Islands Wrongful Discharge Act," ("WDA"), codified at 24 V.I.C. § 76. (Dkt. No. 1). She filed the instant lawsuit in August 2012.

Both parties engaged in discovery, and Defendant then moved for summary judgment on January 23, 2014. (Dkt. No. 41). In its Motion, Defendant argues that the WDA does not apply to Plaintiff because she was a supervisory employee, and the National Labor Relations Act ("NLRA") preempts the WDA for supervisory employees. (Dkt. No. 42 at 9). Alternatively, Defendant asserts that, even if the WDA applies, Defendant offered a statutorily-approved reason for terminating Plaintiff—namely, that she did not perform certain reporting duties properly and allegedly lied about her reporting. (Dkt. No. 42 at 18-19).[1] Accordingly, Defendant contends that the termination was not wrongful and the WDA claim lacks merit. (Dkt. No. 42 at 21). Defendant claims that no genuine issue of material fact exists as to Plaintiff's status as a supervisor, and that even if Plaintiff was a supervisor, no genuine issue of material fact exists as to the merits of the WDA claim. *Id.* Thus, according to Defendant, summary judgment in its favor is appropriate.

Plaintiff has opposed Defendant's Motion, asserting first that she did not fit the definition of supervisory employee, and thus the WDA applies to her tenure with Defendant. (Dkt. No. 46

---

[1] The central dispute surrounding Plaintiff's termination concerns Plaintiff's accessing of, and reporting on, the Guard Families Management System ("GFMS"). The GFMS is an application in which FAC personnel report their efforts at work and track claims that National Guard families bring to the Center. (Dkt. No. 42). Defendant alleges that Plaintiff was terminated for failing to report into the GFMS, and for other problems stemming from the alleged failure to report. (Dkt. No. 42 at 17).

2

at 4-5). Plaintiff also argues that material questions of fact exist regarding the reasons proffered for her termination, and thus Defendant has not met its burden required for summary judgment on the merits of the WDA claim. (*Id.* at 7).

Because the Court finds—when looking at the record in the light most favorable to Plaintiff—that Defendant has failed to show there is no genuine issue of material fact, it will deny the Motion.

## II. DISCUSSION

### A. Applicable Law

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, on the uncontroverted facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014); *Tuno v. NWC Warranty Corp.*, 552 F. App'x 140, 143 (3d Cir. 2014). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Prentice v. OfficeMax N. Am.*, 2012 WL 898323, *1 (D.V.I. Mar. 15, 2012) (citing *United States v. Omnicare, Inc.,* 382 F.3d 432, 436 (3d Cir.2004)). To rebut a summary judgment motion, the non-moving party may cite to any documentation in the record to demonstrate that the moving party has failed to meet its burden, and to demonstrate that issues of material fact exist. Fed. R. Civ. P. 56(c); *see Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011).

In determining whether to grant a motion for summary judgment, the Court views all of the facts in the light most favorable to the non-moving party. *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014); *DeCarolis v. Presbyterian Med. Ctr. of Univ. of Pennsylvania Health Sys.*, 554 F. App'x 100, 102 (3d Cir. 2014) (citing *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006)). The Court also draws every reasonable inference that can be drawn from the record in

the non-movant's favor. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (internal citations omitted). The Court "may not make credibility determinations or engage in any weighing of the evidence" on summary judgment. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). An issue of material fact exists when the trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995). When a material issue of fact exists, summary judgment is inappropriate. *Id.*

### B. Analysis

Defendant asserts that no genuine issue of material fact exists as to Plaintiff's status as a supervisor, and thus she cannot bring a claim under the WDA. (Dkt. No. 42). Defendant also asserts that no genuine issue of material fact exists as to whether Plaintiff's termination was wrongful. *Id.* Plaintiff disagrees, arguing that a jury could rationally find in her favor on both issues. (Dkt. No. 46). Because each issue incorporates distinct questions of law and fact, the Court takes each in turn.

#### i. Preemption Claim

The parties do not dispute that, as a matter of law, the NLRA preempts the local WDA for wrongful discharge claims asserted by supervisory employees. (Dkt. No. 42 at 9; Dkt. No. 46 at 3); *see St. Thomas-St. John Hotel & Tourism Ass'n. Inc. v. Gov't of U.S. Virgin Islands ex rel. Virgin Islands Dep't of Labor*, 357 F.3d 297, 303-04 (3d Cir. 2004) ("the WDA, as applied to supervisors, conflicts with Section 14(a) of the NLRA" and is thus preempted). Accordingly, whether Plaintiff can assert the WDA claim in her Complaint depends on whether she was a supervisor in her role as a FAC Coordinator. *St. Thomas-St. John Hotel & Tourism Ass'n. Inc.,* 357 F.3d at 304. In order to prevail on the issue for purposes of its summary judgment motion,

4

Defendant must show that there is no genuine issue of material fact that Plaintiff was a supervisor, and she is thus barred from bringing a claim under the WDA. *See Prentice*, 2012 WL 898323 at *1.

The NLRA defines a supervisory employee as:

"[A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

29 U.S.C. § 152. Whether an employee qualifies as a supervisor is determined by her actual responsibilities rather than a formal title. *N.L.R.B. v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 290 n.19 (1974). An employee is considered supervisory "only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672, 681-82 (1980). A supervisory distinction, however, requires performance of only one of the supervisory functions set forth in the NLRA. *NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 574 (1994). The Supreme Court addressed the meaning of "supervisor" last year, holding that the defining element of the term is the ability to take "tangible employment actions"—such as hiring, firing, disciplining and promoting—that have an economic effect on supervised employees. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2445 n. 7 (2013).[2] The inquiry as to whether an

---

[2] The Court, in *Vance*, defined the meaning of "supervisor" in the Title VII context. The Supreme Court did, however, address the meaning in the NLRA context as well, emphasizing the same tangible employment actions as hallmarks of supervisory authority:

"The NLRA certainly appears to define "supervisor" in broad terms. . . . [I]n defining a supervisor for purposes of the NLRA, Congress sought to distinguish "between straw bosses, leadmen, set-up men, and other minor supervisory employees, on the one hand, and the supervisor vested with such genuine management prerogatives as the right to hire or fire, discipline, or make effective recommendations with respect to such action." S.Rep. No. 105, 80th Cong., 1st Sess., 4 (1947). Cf.

5

employee is a supervisor is "purely factual" and "var[ies] from case to case." *N.L.R.B. v. Mercy Coll.*, 536 F.2d 544, 547 (2d Cir. 1976). The Court, accordingly, looks to the facts in the record herein to determine whether any genuine issue exists as to Plaintiff's supervisory status.

Defendant asserts the following facts as evidence that Plaintiff was a supervisor: (1) she listed assigning work to FAC staff as one of her duties on a job application; (2) she identified herself, both in testimony and in emails, as a supervisor with monitoring and evaluation duties; (3) Linda Todman ("Todman"), State Family Program Coordinator for the V.I. National Guard, referred to Plaintiff as a supervisor with monitoring duties; (4) another staff member testified that Plaintiff would discipline her on occasion; (5) Plaintiff trained multiple employees and conducted weekly meetings with them; (6) Plaintiff participated in an interview for at least one prospective employee, and opined that Todman solicited her input in the hiring decision; and (7) Plaintiff was paid 22% more than other FAC employees she oversaw. (Dkt. No. 42 at 11-15).

Plaintiff counters that the FAC handbook shows that her primary role was to assist Todman and serve as a liaison between the FAC staff and Todman, both in terms of assigning work and in quality control. (Dkt. No. 46 at 3-4; Dkt. No. 48, Ex. F). She also argues that she did not have

---

*NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 586, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994) (*HCRA*) (GINSBURG, J., dissenting) ("Through case-by-case adjudication, the Board has sought to distinguish individuals exercising the level of control that truly places them in the ranks of management, from highly skilled employees, whether professional or technical, who perform, incidentally to their skilled work, a limited supervisory role"). Accordingly, the NLRB has interpreted the NLRA's statutory definition of supervisor more narrowly than its plain language might permit. See, *e.g., Connecticut Humane Society, supra,* at *39 (an employee who evaluates others is not a supervisor unless the evaluation "affect[s] the wages and the job status of the employee evaluated"); *In re CGLM, Inc.,* 350 NLRB 974, 977 (2007) ("'If any authority over someone else, no matter how insignificant or infrequent, made an employee a supervisor, our industrial composite would be predominantly supervisory. Every order-giver is not a supervisor. Even the traffic director tells the president of the company where to park his car'" (quoting *NLRB v. Security Guard Serv., Inc.,* 384 F.2d 143, 151 (C.A.5 1967))). The NLRA therefore does not define the term "supervisor" as broadly as petitioner suggests."
*Vance*, 133 S. Ct. at 2445 n.7.

6

the authority to hire, fire, or discipline employees, and offers her own deposition testimony, as well as that of other FAC employees and the FAC handbook in support.   (Dkt. No. 46 at 4).

A review of the record evidence reveals that Defendant has failed to sustain its burden of establishing the absence of a genuine issue of material fact because issues of fact exist regarding the exact nature and extent of Plaintiff's job responsibilities.   For example, while Plaintiff's and Todman's deposition testimonies, and other record evidence indicate that Plaintiff monitored and evaluated the work of, and assigned work to, subordinate employees (Dkt. No. 43, Exs. 5, 17, 18), there is some question as to the precise scope of her responsibilities in that regard, especially in view of the description of her role as an assistant to Todman and a liaison between the FAC staff and Todman.   (Dkt. No. 48, Ex. D); *see Vance*, 133 S. Ct. at 2452 (employee must have more than the power to "assign a limited number of tasks" to be a supervisor).   Further, while Plaintiff participated in at least one interview, there is evidence of record that she had no hiring or firing authority; that her superior (Todman) was in charge of staffing; and that Plaintiff did not participate in the hiring process for a number of other employees.   (Dkt. No. 43, Ex. 4; Dkt. No. 48, Exs. D, F).   Moreover, while one FAC employee testified that Plaintiff disciplined her on occasion, the same deposition testimony also indicates that such discipline consisted of alerting Todman or other managers regarding infractions, and thus that Plaintiff lacked authority to decide whether discipline was actually meted out or warranted. (Dkt. No. 43, Ex. 18; Dkt. No. 48, Ex. C).

In determining whether a genuine issue of material fact exists, the Court looks at the record evidence in the light most favorable to the non-moving party.   *Seamans*, 744 F.3d at 859.   In light of this mandate, and the issues regarding Plaintiff's role as set forth above, the Court cannot find, as a matter of law, that Plaintiff was a supervisor. *See Prentice*, 2012 WL 898323 at *4 (summary judgment denied as to supervisory status where extent of plaintiffs' roles was unclear).   Rather,

7

because there is evidence that Plaintiff did not have the authority to "take tangible employment actions" that had an economic effect on other employees, *Vance*, 133 S. Ct. at 2445 n. 7, and there is also evidence that Plaintiff's allegedly supervisory responsibilities did not "require[] the use of independent judgment," 29 U.S.C. § 152, a jury could rationally find that she was not a supervisor within the meaning of the NLRA.

In view of the foregoing, the Court finds that there are genuine issues of material fact as to Plaintiff's supervisory status and whether the WDA claim is preempted as a consequence. *See Celotex*, 106 S. Ct. at 2552.   Defendant has thus failed to carry its burden to show no such issue exists.   Accordingly, summary judgment on the question of whether Plaintiff was a supervisor will be denied.

### ii.    WDA Claim

Having determined that summary judgment on Defendant's preemption argument must be denied, the Court next addresses the WDA claim.   Defendant bears the burden of showing that there is no genuine issue of material fact, and thus that no fact-finder could rationally find that the termination was wrongful. *Omnicare, Inc.,* 382 F.3d at 436.[3]

In support of its Motion, Defendant claims that Plaintiff was terminated for "not accessing and reporting on the [Guard Family Management System ("GFMS")] and for submitting multiple weekly time reports stating that she was on the GFMS." (Dkt. No. 42 at 17).[4]   Defendant asserts

---

[3] The parties devote a substantial portion of their respective filings to addressing the question of who bears the burden of persuasion in litigating a WDA claim.   (Dkt. No. 42 at 17; Dkt. No. 46 at 14-16).   However, regardless of which party bears the burden of persuasion, the Court's finding that there are genuine issues of material fact precludes entry of summary judgment.

[4] The WDA sets forth nine statutorily-approved bases for termination, before providing that "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged."   24 V.I.C. § 76.   Defendant argues that its basis for termination fits into multiple categories within 24 V.I.C. § 76 (a)—namely, those stating that an employer may dismiss any

8

that there is no genuine issue of material fact as to whether Plaintiff accessed the GFMS, and thus "there is no evidence from which a fact finder could reasonably (1) disbelieve the employer's articulated legitimate reasons or (2) believe that a non-WDA approved reason was more likely than not" the reason for the termination. (Dkt. No. 42 at 20).   On the other hand, Plaintiff contends that whether she accessed the system is a disputed question of fact, and offers deposition testimony in support of her contention. (Dkt. Nos. 46, 48).

For the reasons that follow, the Court finds that genuine issues of material fact exist regarding the GFMS access issue. Thus, summary judgment on the merits of the WDA claim will be denied.

Defendant alleges that Plaintiff did not comply with the GFMS data entry requirements of the FAC Coordinator position, and it was thus justified in terminating her as a matter of law.  *See supra,* note 4*.*  Evidentiary support for this contention comes from the deposition testimonies of the IT Director of Defense Web ("Defense Web"), the company that built and manages the GFMS, and Bobbie Krynicki ("Krynicki"), a contractor who monitored GFMS usage for the National Guard at FACs across the country.   (Dkt. No. 43, Exs. 6, 7).   Defendant notes that funding for the FAC was dependent on proper data entry into GFMS—a fact well known to Plaintiff—and that she was required to enter her work into the system. (Dkt. No. 42 at 2-3).   Defense Web's IT Director testified that the company tracks all users accessing GFMS; that the company has redundancy backups in place to preserve the login and input information; and that the system is constantly monitored and audited.  (Dkt. No. 43 at 4-5).   The Defense Web deponent further testified that it

---

employee "(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; . . . (5) who performs his work assignments in a negligent manner . . . ;[and] (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer"—and thus the termination cannot be considered wrongful because it is statutorily protected.  *Id.*

would be "near impossible" and "extremely unlikely" for a FAC employee to log in and access the GFMS system without such access being recorded. (Dkt. No. 43, Ex. 7 at 50).[5] In response to a subpoena, Defense Web queried the database that stores the login information and prepared documentation of Plaintiff's usage of the system in 2011. (Dkt. No. 43, Ex. 7 at 23, 44). The document indicates a number of authorized logins in the early months of 2011, but none between May 4 and November 23, 2011. (Dkt. No. 43, Ex. 8). A separate screen shot prepared by Krynicki also shows May 4 as Plaintiff's last access date. (Dkt. No. 43, Ex. 11).

Plaintiff submitted weekly status reports detailing her work activities, many of which state that she accessed and reviewed information in the GFMS. (Dkt. No. 43, Ex. 15). Defendant states that the inconsistency between Plaintiff's representations in her reports and Defense Web and Krynicki's documentation served as a reason for the termination, in addition to other violations stemming from Plaintiff's alleged failure to log into GFMS. (Dkt. No. 43 at 8). Defendant argues that there is no record evidence which could reasonably support a jury "disbeliev[ing] the employer's articulated legitimate reasons" for the termination. (Dkt. No. 46 at 20).[6]

In her Opposition and Counter Statement of Material Facts, Plaintiff highlights deposition testimony which raises some question regarding the possibility of access to the GFMS going unrecorded by Defense Web. (Dkt. Nos. 46, 48). She cites to evidence that: (1) employees stated they were regularly logging in to the GFMS, and such logins were not reflected in the Defense Web report; (2) Virgin Islands Family Program Coordinator Linda Todman had logged in

---

[5] Defendant characterizes the alleged inability to log into the GFMS without being recorded as "impossible." (Dkt. No. 42 at 5; Dkt. No. 43 at 6).

[6] Defendant argues that Plaintiff lied about her access, and thus her actual ability to access is irrelevant. (Dkt. No. 51 at 1-2). This argument, of course, involves credibility determinations that the Court is not permitted to make on summary judgment. *See Marino*, 358 F.3d at 247.

10

at various points, and these logins were not reflected in the Defense Web report; (3) a practice database called the User Acceptance Test ("UAT") could have been confused for the real GFMS, and employees may have been logging into the practice version thinking it was the GFMS and; (4) Defendant did not attempt to resolve discrepancies between employees' statements that they had logged in and reports indicating that they had not done so.   (Dkt. No. 46 at 17).

      Plaintiff testified that, in addition to the failure of her own logins to be reported properly, she had personally witnessed another FAC employee log into the GFMS in early November, and such access was not recorded on the Defense Web or Krynicki reports.   (Dkt. No. 48, Ex. D). The other employee testified that: "I know that I did log in. And so that's when she asked me to show her, because she probably thought that I had – I was doing something wrong. And when I showed her, she pulled the report, it still didn't show I was in there." (Dkt. No. 48, Ex. C at 3). Todman's deposition testimony also suggests she may have logged in to GFMS in August of 2011, and such access was not recorded in Krynicki's report.   (Dkt. No. 48, Ex. E at 8).   Finally, Plaintiff testified that the UAT was indistinguishable from the real GFMS, and "there is no practical way of knowing you are logged into the practice database rather than the real one" given their similar URLs and interfaces.   (Dkt. No. 48, Ex. G).   Defense Web's IT Director also testified that the two systems looked "if not exactly the same, very similar."   (Dkt. No. 48, Ex. A at 9-10).[7]   Plaintiff argues that because the UAT had a separate database, any reports culled from GFMS would not report logins to the UAT, and thus the Defense Web and Krynicki reports—both

---

[7] Defendant asserts that Plaintiff's claim regarding the UAT possibility is a fabrication, and offers screen shots of the two sites to show the differences—one requires a security login and the other does not—and an affidavit stating that employees could not accidentally automatically type the UAT web address. (Dkt. No. 51, Exs. B, C, D).  However, as noted, even Defendant's proffered evidence from Defense Web's IT Director advances the proposition that the sites looked remarkably similar.

11

pulled from GFMS—would not reflect logins employees may have made to the UAT. Plaintiff asserts that based on her proffered evidence, a fact-finder could rationally find in Plaintiff's favor and thus a genuine issue of material fact exists.

On summary judgment, the Court's mandate to view the record in the light most favorable to the non-moving party, and to draw all reasonable inferences in favor of the non-moving party, is axiomatic. *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 230 (3d Cir. 2003). Here, Plaintiff has provided deposition testimony supporting the proposition that the accessing of the GFMS was not properly recorded, or, in the alternative, that a visually indistinguishable, but distinct, database may be the source of confusion. Viewed in the light most favorable to Plaintiff, the evidence is sufficient to create genuine issues of material fact, and precludes the entry of summary judgment in favor of Defendant on the merits of Plaintiff's WDA claim.[8]

### III. CONCLUSION

Plaintiff's evidence "demonstrate[s] a dispute over facts that might affect the outcome of the suit," (*Groman*, 47 F.3d at 633 (citing *Anderson*, 477 U.S. 248)), and is thus sufficient to survive summary judgment. Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 41), will be denied. An appropriate Order accompanies this Opinion.

Date: July 9, 2014 _____/s/_____
                                                      WILMA A. LEWIS
                                                      Chief Judge

---

[8] In reaching this determination, the Court does not reach a conclusion as to whether a fact-finder should or would find in Plaintiff's favor. It determines only—as appropriate on summary judgment—that a rational jury could find in Plaintiff's favor on the proffered evidence. *See Groman*, 47 F.3d at 633.