DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| SHIRMEL GUMBS-HEYLIGER, ) ) Plaintiff, ) ) v. ) ) CMW AND ASSOCIATES CORPORATION, ) ) Defendant. ) | Civil Action No. 2012-00078 |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
**Emily A. Shoup, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Michael J. Sanford, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

    THIS MATTER came before the Court for a Pretrial Conference held on October 1, 2014. At the Pretrial Conference, the Court inquired, *inter alia*, into the legal issues presented by the parties in their "Joint Final Pretrial Order" (Dkt. No. 80), "Plaintiff's Pretrial Memorandum" (Dkt. No. 87), and the "Trial Brief of Defendant CMW and Associates Corporation" (Dkt. No. 90). One of the issues was the applicable burden of proof in a case brought under the Virgin Islands Wrongful Discharge Act—specifically, whether the burden of production or burden of persuasion shifts to the employer once a *prima facie* case has been made by the employee. (Dkt. No. 80 at 10-11). The Court held a hearing on October 8, 2014, and the parties provided supplemental briefing on the issue. (Dkt Nos. 117, 122, 123, 125, 128).

By Order entered on October 13, 2014, the Court ruled that Plaintiff has the initial burden of production to establish a *prima facie* case of wrongful discharge, and Defendant then has the burden of persuasion to show by a preponderance of the evidence that Plaintiff was discharged for one of the nine reasons enumerated in Section 76(a) of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76. (Dkt. No. 133). The trial in this diversity action commenced on October 14, 2014, in accordance with this Court's ruling on the burden of proof. Per the Court's October 13, 2014 Order, this Memorandum Opinion embodies the Court's reasons for its ruling. (*Id.*).

## I. BACKGROUND: LEGAL CONTEXT

The Virgin Islands Wrongful Discharge Act ("WDA") was enacted on December 29, 1986. Prior to its enactment, this Court recognized a common law cause of action for wrongful discharge. In *Robinson v. Hess Oil V.I. Corp.*, the Court adopted a public policy exception to the at-will employment doctrine, holding that a "claim for tortious discharge, regardless of the absence of an applicable statute[,] states a claim upon which relief may be granted." 19 V.I. 106, 111 (D.V.I. 1982). The decision in *Robinson* was later acknowledged and relied upon in *Moore v. A.H. Riise Gift Shops*, 23 V.I. 227, 232 (D.V.I. 1987), which noted that "many jurisdictions have modified the common law by recognizing a cause of action for wrongful discharge of an at-will employee." *Id.* at 232-33 (collecting cases).[1]

---

[1] Courts have noted that both *Robinson* and *Moore* were decided before the enactment of the WDA. *See Urgent v. Hovensa, L.L.C.*, 2008 U.S. Dist. LEXIS 77455, at *25 (D.V.I. 2008) ("*Robinson* and *Moore* were both decided prior to the enactment of the Virgin Islands Wrongful Discharge Act in 1986."); *Bell v. Chase Manhattan Bank*, 40 F. Supp. 2d 307, 309 n.2, 40 V.I. 377 (D.V.I. 1999) ("With the enactment of the WDA in 1986, the validity of *Robinson* and *Moore* has been rendered moot."). Although *Moore* was decided in 1987, it appears that the Court relied on the decision in *Robinson*, and not the WDA, because the alleged wrongful discharge occurred in 1984, more than two years before the WDA was enacted. *See Alvarez v. Pueblo Int'l, Inc.*, 24 V.I. 141, 145 (V.I. Terr. Ct. 1989) ("The acts alleged occurred prior to the enactment of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76, so that in order to maintain an action for wrongful discharge, the plaintiff must show that his employer violated some public policy in terminating his employment.") (citation omitted).

With the enactment of the WDA, the Virgin Islands Legislature codified and circumscribed the grounds upon which an employer may lawfully discharge an employee. Under Section 76(a) of the WDA, an employer may discharge an employee for any one of nine enumerated reasons. *See* 24 V.I.C. § 76(a).[2] Section 76(c) provides that "[a]ny employee discharged for reasons other than those stated in subsection (a) . . . shall be considered to have been wrongfully discharged," except if discharged as a result of cessation of business operations or general cutbacks of the work force. *Id.* at § 76(c). Courts have long recognized that Section 76(c) of the WDA establishes a "presumption" that an employee has been "wrongfully discharged" if discharged for any reason other than the nine listed in Section 76(a). *See, e.g.*, *Gonzalez v. AMR*, 549 F.3d 219, 221-22 (3d Cir. 2008); *Harrilal v. Blackwood*, 44 V.I. 144, 149-50 (V.I. Terr. Ct. 2001); *The Village, V.I. Partners in Recovery v. The Gov't of the V.I.*, 39 V.I. 109, 114 (V.I. Terr. Ct. 1998); *Hess Oil V.I. Corp. v. Richardson*, 32 V.I. 336, 344 (D.V.I. 1995).

An employee claiming wrongful discharge may seek reinstatement with back pay through an administrative process, *see* 24 V.I.C. § 77, and/or compensatory and punitive damages through the judicial process, together with attorney's fees and costs, *see id.* at § 79. The state of

---

[2] Section 76(a) provides:

(a) Unless modified by union contract, an employer may dismiss any employee:

    (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
    (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;
    (3) whose use of intoxicants or controlled substances interferes with the proper discharge of duties;
    (4) who willfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;
    (5) who performs his work assignments in a negligent manner;
    (6) whose continuous absence from his place of employment affect the interest of his employer;
    (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
    (8) who is dishonest; or
    (9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

24 V.I.C. § 76(a).

the law on the burden of proof in the administrative and judicial contexts has developed in different directions.

The burden of proof in the administrative process is governed by a Department of Labor regulation, which provides that the employer bears the ultimate "burden of persuading" the presiding officer, "by a preponderance of the evidence, that the discharge was lawful." 24 V.I. R. & REGS. § 77-59. In *The Village, V.I. Partners in Recovery v. The Gov't of the V.I.*, an employer challenged this regulation on the grounds that it "offends existing legal principles by incorrectly shifting the burden of proof from the employee to the employer" and is "contrary to common law precedent in that the burden of proof in the Virgin Islands is always placed upon the plaintiff in civil cases." 39 V.I. at 113. The then Territorial Court—now Superior Court—rejected these arguments and upheld the regulation. *Id*. at 120.

In upholding the regulation, the court concluded that after the employee has established a *prima facie* case, and thus triggered the statutory presumption of wrongful discharge, the burden of proof shifts to the employer to prove a lawful reason for the discharge. *Id*. at 117-18. The court found that this conclusion was consistent with Rule 302 of the Federal Rules of Evidence; a now-repealed Virgin Islands statute, 5 V.I.C. § 812(a), that shifted the burden of proof to the party against whom the presumption operates; existing case law; and "the Virgin Islands Wrongful Discharge Act itself." *Id*. at 122. The court reasoned that "it appears that all Virgin Islands Rules and Regulations Title 24, Section 77-59 requires is that the employer bear the burden of his affirmative defenses." *Id*. at 118.

With regard to the burden of proof in WDA judicial proceedings, the District Court in *Rajbahadoorsingh* adopted the *McDonnell Douglas* burden-shifting framework, developed by the United States Supreme Court in the Title VII employment discrimination context. *See*

*Rajbahadoorsingh v. Chase Manhattan Bank, NA*, 168 F. Supp. 2d 496, 504-05 (D.V.I. 2001); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). Under this framework, once a WDA plaintiff establishes the presumption of wrongful discharge through her *prima facie* case, "the burden of production shifts to the employer to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge." *Rajbahadoorsingh*, 168 F. Supp. 2d at 505 (citing *McDonnell Douglas*, 411 U.S. at 802). According to the Court in *Rajbahadoorsingh*, this second prong "does not require the employer [to] prove that it was motivated by" one of the nine Section 76(a) reasons; it is simply a burden of production and the burden of persuasion remains with the plaintiff. *Id.* After the employer's showing, the burden of production shifts back to the discharged employee, to demonstrate "weakness[es], implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action," such that a factfinder could reasonably "(1) disbelieve the employer's articulated legitimate reasons or (2) believe that a non-WDA approved reason was more likely than not a motivating or determinating cause of the employer's action." *See id.* (internal quotation marks omitted). Thus, under this analysis, the burden of persuasion remains with the plaintiff, notwithstanding the shifting burden of production.

The *Rajbahadoorsingh* Court concluded that WDA claims should proceed in a manner similar to Title VII discrimination claims because the WDA "shares many of the same characteristics" as Title VII, including congressional intent to assure equality of employment opportunities. *Id.* at 503-04 ("The Supreme Court's observations on the Congressional interest behind the anti-discrimination in employment laws are equally applicable to the purposes of the Legislature in creating the Virgin Islands Wrongful Discharge Act.") (citing *McDonnell*

5

*Douglas*, 411 U.S. at 800-01). However, the Court cited no legislative history of the WDA. *See id.*

The Superior Court of the Virgin Islands subsequently adopted the *Rajbahadoorsingh* Court's burden of proof allocation for WDA claims brought in court, reasoning that the shifting burdens—in which the plaintiff, not the employer, carries the ultimate burden of persuasion—"prevent the Court and/or the jury from being required to undertake plenary reviews of individual employment decisions." *Fenton v. C & C Constr. & Maint., Inc.*, 48 V.I. 263, 272 (V.I. Super. Ct. 2007). The Superior Court further noted that "it would be economically catastrophic to require an employer to devote resources to each employment decision equal to the resources devoted to full-blown litigation." *Id.*

This Court also applied the *Rajbahadoorsingh* analysis to WDA causes of action. *See, e.g.*, *Galloway v. Islands Mech. Contractor, Inc.*, 2012 U.S. Dist. LEXIS 129014, at *56 (D.V.I. 2012) (stating, in denying defendant's motion for summary judgment, that "a claim under the WDA operates substantially the same as a claim alleging discrimination in termination under Title VII") (citing *Rajbahadoorsingh*, 168 F. Supp. 2d at 505-06); *James-Frederick v. Frenchman's Reef & Morning Star Marriott Beach Resort*, 2013 U.S. Dist. LEXIS 108488, at *16 (D.V.I. 2013) (applying the *Rajbahadoorsingh* analysis to a constructive discharge claim brought under the WDA); *Paul v. Hovensa, L.L.C.*, 2013 U.S. Dist. LEXIS 49851, at *87-92 (D.V.I. 2013) (granting defendant's motion for summary judgment after analyzing the facts in accordance with the *Rajbahadoorsingh* burden-shifting framework).

Recently, however, the *Rajbahadoorsingh* Court's application of the *McDonnell Douglas* framework to WDA claims filed in court has been brought into question. In *Maynard v. Rivera*, 675 F.3d 225 (3d Cir. 2012), the Third Circuit noted that there was no evidence of the Virgin

Islands Legislature's goals in promulgating the WDA, and therefore that, "the *Rajbahadoorsingh* court's attempted parallel [to Title VII] falls short." *Id*. at 230 ("This Court's diligent research has failed to disclose any legislative history to support the *Rajbahadoorsingh* court's parallel to federal employment discrimination legislation."). In addition, the Third Circuit expressed reservations about invoking "considerations of fairness and efficiency"—which are "the cornerstones of civil litigation in general"—as a means to "justify importing a legal test from a distinct sphere of employment litigation." *Id.* The Superior Court has stated that it shares the Third Circuit's concerns. *See Celestine v. St. Croix Fin. Ctr., Inc.*, 2014 V.I. LEXIS 68, at *6 n.1 (V.I. Super. Ct. 2014) ("For reasons stated by the Third Circuit, this Court has 'reservations regarding the application of the *McDonnell Douglas* analytical framework to WDA claims.' Instead, the Court will simply apply the plain language of the statute to Plaintiff's claim.") (quoting *Maynard*, 675 F.3d at 231).[3]

With this background, the Court will analyze anew the issue of the burden of proof for WDA claims brought in court.

## II. DISCUSSION

### A. Plain Language Analysis

To determine the applicable burden of proof in a case brought under the WDA, the Court will look first to the plain language of the statute. *See Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("[E]very exercise of statutory interpretation begins with an examination of the plain language of the statute.") (citations omitted). In so doing, the Court will also examine the structure, design, and object of the WDA. *See S.T. v. People of V.I.*, 51 V.I. 420, 435 (V.I.

---

[3] In the context of a summary judgment motion, the Superior Court, applying the plain language of the WDA, found that the plaintiff had provided enough evidence for a reasonable jury to find that the defendant terminated the plaintiff "for illegitimate reasons." *Celestine*, 2014 V.I. LEXIS 68, at *7. The Court noted that "even if the Court were to apply the burden shifting standard from *McDonnell Douglas*, the Court's decision would be the same in light of the wide-ranging factual disputes over the circumstances of Plaintiff's dismissal." *Id*. at *6 n.1.

2009) ("'[T]he plain meaning of statutory language is often illuminated by considering not only the particular statutory language, but also the structure of the section in which the key language is found, the design of the statute as a whole[,] and its object.'") (quoting *United States v. Tupone*, 442 F.3d 145, 151 (3d Cir. 2006)).

The plain language of the WDA is silent on the allocation of the burden of proof. However, the structure and design of the statute provide helpful insights. In particular, it is noteworthy that the WDA is written so as to permit certain specific grounds for discharging an employee—to the exclusion of all others—rather than so as to prohibit certain identified conduct. As noted in *General Offshore Corp. v. Farrelly*, the WDA "inverts the system by creating a list of *acceptable* reasons for discharge, proscribing all others that are not justifiable by business necessity or other, similar reasons." 25 V.I. 226, 257-58 (D.V.I. 1990).

The structure of the WDA has been described as "perhaps curious, in that it states acceptable reasons for discharge rather than unacceptable [reasons.]" *Id.* at 261. The distinctive structure of the statute is further highlighted by the fact that the WDA creates a presumption that an employee is wrongfully discharged if discharged for a reason other than the nine reasons enumerated in the statute. *See* 24 V.I.C. § 76(c). Both of these elements of the statute indicate that the WDA "abridges somewhat the ability of employers to discharge workers." *Gen. Offshore Corp.*, 25 V.I. at 253.

Further, as the court in *The Village* noted, the design and structure of the WDA creates what appears to be an affirmative defense. 39 V.I. at 118 ("[I]t appears that all [the regulation] requires is that the employer bear the burden of his affirmative defenses."). Under Virgin Islands law, the burden of proving an affirmative defense in a civil case is on the defendant. *See, e.g.*, *Maduro v. Am. Airlines, Inc.*, 2008 V.I. Supreme LEXIS 24, at *9 (V.I. 2008) (finding defendant

has the burden of proving it is entitled to summary judgment on an affirmative defense); *Joseph v. Church of God (Holiness) Acad.*, 47 V.I. 419, 429 (V.I. Super. Ct. 2006) (stating, in the context of a summary judgment motion, that "[a]ssumption of [the] risk is an affirmative defense and thus, [d]efendants bear the burden of establishing the absence of a genuine issue of material fact concerning their proof") (citing RESTATEMENT (SECOND) OF TORTS § 496G). This is consistent with the Virgin Islands statutory requirement that "[i]n civil cases the affirmative of the issue shall be proved . . . ." 5 V.I.C. § 740(5). Thus, the party against whom the affirmative defense is asserted is not required to prove a negative. *See Bryan v. Fawkes*, 2014 V.I. Supreme LEXIS 53, *97 (V.I. 2014) (citing 5 V.I.C. § 740(5)); *accord James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 385 (7th Cir. 2009) (stating that "[i]t is sensible to place the burden of proof of an affirmative defense on the defendant, rather than making the plaintiff prove a negative").

Together with the structure and design of the WDA is its object, which the Court can glean from the limited legislative history that is available.[4] The WDA was enacted amidst concerns expressed by members of the Virgin Islands Legislature at the December 15, 1986 floor debate.[5] At the debate, Senators commented on the lack of recourse for Virgin Islands employees wrongfully discharged from their jobs. One Senator explained:

> [W]rongful discharge has been a practice here in the Virgin Islands over the years. It has been going on in the hotel industry, the restaurant industry, the retailer's industry—you name it. . . . If they don't like somebody, they send them home. They have no recourse even through the Department of Labor. Except that when they go to Labor, Labor tell[s] them, "Well, we have no remedy."

---

[4] In response to a request for the legislative history of the WDA from the Virgin Islands Legislature, the Court learned that the legislative history was destroyed during a hurricane. Accordingly, the Court will extract available excerpts of the legislative history from cases that quoted such excerpts.

[5] According to the court in *Bell v. Chase Manhattan Bank*, at the time of that decision in 1999, the transcript of the December 15, 1986 floor debate was apparently "[t]he only legislative history available" on the WDA. 40 F. Supp. 2d at 310.

> . . . [W]hy shouldn't we protect the employees of the Virgin Islands when it comes to wrongful discharge? And that is basically what the bill proposes to do; set up the procedural vehicle so that employees that are abused and otherwise kicked around by their employers have some recourse in the employment industry.

*Diaz v. Pueblo Int'l, Inc.*, 23 V.I. 346, 350-51 (V.I. Terr. Ct. 1988) (Comment of Sen. Adelbert Bryan, Transcript of Regular Session of the Sixteenth Legislature (Dec. 15, 1986)). Another Senator noted: "Many of us here . . . have seen many people who had been wrongfully, willfully, disgustingly removed from their jobs, just put out on the whim of an employer without any recourse whatsoever." *Id*. at 351 (Comment of Sen. Virdin Brown) (alteration in original). With this background, it is not surprising that the WDA "plainly benefits workers, by expanding both the scope of their remedies for wrongful discharge and the circumstances under which those remedies are available." *Gen. Offshore Corp.*, 25 V.I. at 253; *accord Hess Oil V.I. Corp. v. Richardson*, 32 V.I. 336, 346 (D.V.I. 1995) (describing the breadth of remedies available to wrongful discharge claimants, specifically that "the Legislature intended that the judicial remedies listed in the statute be concurrent to those available through the administrative process").

In view of the foregoing, the Court finds that the WDA itself supports the conclusion that the burden of persuasion properly lies with the employer to prove that the employee was discharged for one of the nine permissible reasons under the Act. Specifically, the structure, design, and object of the statute—including its "invert[ed]" system, its presumption of wrongful discharge, its creation of an apparent affirmative defense, and the Legislature's expression of a social policy concern regarding a perceived practice of wrongful discharge in the Virgin Islands—cumulatively point to the conclusion that the intent of the Legislature was to place the burden of persuasion on the employer. Accordingly, the Court finds that once the employee

establishes a *prima facie* case of wrongful discharge, the burden of persuasion shifts to the employer to show by a preponderance of the evidence that the employee was discharged for a permissible reason under the WDA.

### B. The Legal Effect of Presumptions that Further Social Policy

Although the Court believes that an analysis of the plain language—including the structure, design, and object—of the WDA is sufficient to conclude that the burden of persuasion is on the employer, it recognizes that the court in *The Village* relied in part on the now-repealed Virgin Islands statute on presumptions, 5 V.I.C. § 812(a), to reach its decision to uphold the administrative regulation. *See* 39 V.I. at 118. The repeal of the statute raises a question as to the current law in the Virgin Islands on the effect of presumptions. An analysis of this issue, as it pertains to presumptions influenced by social policy, leads the Court to the same conclusion—the burden of persuasion rests with the employer in WDA cases.

The statute on presumptions, 5 V.I.C. § 812(a), was repealed on April 7, 2010, and replaced with the Federal Rules of Evidence. *See* 5 V.I.C. § 812(a).[6] The effect of presumptions in the Virgin Islands is now governed by Federal Rules of Evidence 301 and 302. Under Rule 302, "state [or territorial] law governs the effect of a presumption regarding a claim or defense for which state [or territorial] law supplies the rule of decision." FED. R. EVID. 302. As noted by the Court in *The Village*, "[b]ecause wrongful discharge claims are based upon the Virgin Islands

---

[6] Title 5 V.I.C. § 812(a) provided, in relevant part:

> Subject to section 814 of this title, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates . . . .

*The Village*, 39 V.I. at 116 (alteration in original).

Wrongful Discharge Act, it is *Federal Rule of Evidence 302*, not 301, which applies." 39 V.I. at 116.[7] This Court must therefore apply Virgin Islands law on the effect of presumptions.

As a result of the repeal of 5 V.I.C. § 812(a), there is no longer a statute governing the effect of presumptions in the Virgin Islands. Nor has there been any Supreme Court of the Virgin Islands precedent on the issue. The Third Circuit has instructed that "when exercising jurisdiction over cases requiring the application of Virgin Islands law, [this Court is] required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law, and should seek guidance from Superior Court decisions in undertaking this endeavor." *Edwards v. Hovensa, L.L.C.*, 497 F.3d 355, 362 n.3 (3d Cir. 2007). Although this Court is not bound by Superior Court decisions, *see id.* (citation omitted), the Third Circuit has "recognized that . . . decisions of the Superior Court of the Virgin Islands can be used as a gauge for ascertaining state law." *Maynard*, 675 F.3d at 230 (citing *Edwards*, 497 F.3d at 361).

Plaintiff cites *Rice v. Clements*, 26 V.I. 153 (V.I. Terr. Ct. 1991), for the proposition that the Territorial Court—now Superior Court—has held that a statutory presumption shifts the burden of proof to the party against whom the presumption operates. *See* "Plaintiff's Memorandum of Law Regarding the Effect of Presumptions on the Burden of Proof." (Dkt. No. 125 at 1-2). The issue before the court in *Rice* was whether death could be established before the expiration of the ten-year statutory period. *See* 26 V.I. at 156.[8] In analyzing the issue, the court

---

[7] Federal Rule of Evidence 301 provides:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

FED. R. EVID. 301.

[8] The Virgin Islands presumption of death statute provides:

> In case of the absence from the jurisdiction of any person owning property therein, for a period of

12

stated:

> In this jurisdiction, when proving a person dead before the required ten year period, there must be proof of circumstances sufficient to rebut the presumption of continued life, whereas after the ten year period has passed, the presumption of death arises as a matter of law.

*Id.* at 158.

*Rice* was decided prior to the repeal of the Virgin Islands statute on presumptions, 5 V.I.C. § 812(a); however, the Territorial Court did not cite to or, it appears, rely on the statute to reach its conclusion that a party asserting death within the ten-year statutory period "must overcome the presumption of life and prove death by a preponderance of the evidence." *Id.* at 159. Nonetheless, this conclusion was consistent with the Virgin Islands statutory law on presumptions at that time—specifically, that "the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates." 5 V.I.C. § 812(a). Although this Court is not bound by Superior Court decisions, the Court finds that the *Rice* decision is instructive in determining the Virgin Islands common law on statutory presumptions, and is in accord with the conclusion that the Court reaches based on the *Banks* analysis below.

In a line of cases beginning with *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), the Supreme Court of the Virgin Islands held that, in the absence of Supreme Court precedent on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt. *See Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014). In a *Banks* analysis, a court balances "three non-dispositive factors":

---

ten years or more, during which time there has been no knowledge or means of knowledge of his whereabouts afforded by him or obtainable by the exercise of reasonable diligence on the part of the heirs, beneficiaries, or other parties in interest of his estate, such heir, beneficiary or other interested party may institute a proceeding for the administration of the estate of such absentee owner, on the presumption that the latter has died intestate.

15 V.I.C. § 168.

> (1) whether any [local or federal] courts [in the Virgin Islands] have previously adopted a particular rule;
> (2) the position taken by a majority of courts from other jurisdictions; and
> (3) most importantly, which approach represents the soundest rule for the Virgin Islands.

*Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012)).

There are two prevailing schools of thought governing the effect of presumptions in civil cases—the Thayer "bursting bubble" theory and the Morgan theory. *See McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 841-42 (3rd Cir. 1994). Under the Thayer theory, the only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. *See* 2 Kenneth S. Broun et al., MCCORMICK ON EVIDENCE § 344, at 508 (6th ed. 2006). If evidence is produced by the party against whom the presumption operates, the presumption disappears. *Id.* The Third Circuit, as well as other courts, has interpreted Federal Rule of Evidence 301 to express the Thayer "bubble bursting" theory of presumptions. *See McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 287-88 (3d Cir. 2006) (citing cases).[9]

Under the Morgan theory, both the burden of production and the burden of persuasion shift to the party against whom the presumption operates. *See* Edmund Morgan, *Instructing the Jury upon Presumptions and Burden of Proof*, 47 HARV. L. REV. 59, 77-83 (1933). It has been stated that the Morgan theory applies "in particular to statutory presumptions created for reasons of social policy." *Montgomery County Fire Bd. v. Fisher*, 468 A.2d 625, 631 (Md. 1983) (citing Edmund Morgan, *Some Observations Concerning Presumptions*, 44 HARV. L. REV. 906, 906-27 (1931) (other citations omitted)). The Thayer theory has been criticized by proponents of the Morgan theory "on the ground that it grants presumptions too weak an effect, especially when substantial policy considerations underlie a presumption." *Cunningham v. City of Manchester*

---

[9] For the full text of Federal Rule of Evidence 301, see note 7, *supra*.

*Fire Dep't*, 525 A.2d 714, 717 (N.H. 1987) (citing MCCORMICK ON EVIDENCE § 344 at 975 (E. Clearly 3d ed. 1984)).

A survey of case law from other jurisdictions reveals that there is a split among the states in their adoption of either the Thayer theory and/or the Morgan theory. Some jurisdictions have strictly adopted one or the other theory.[10] Other jurisdictions have adopted principles from both theories—i.e., only shifting the burden of production, but affording the presumption greater weight by either allowing it to have a continuing effect after rebuttal evidence is introduced or specifying a greater quantum of evidence necessary to overcome the presumption.[11] There are

---

[10] The jurisdictions that have adopted the Thayer theory include, among others: Georgia, *Miller v. Miller*, 366 S.E.2d 682, 683 (Ga. 1988) ("Concerning the effect of a presumption on the burden of proof, the rule, generally, is that while a presumption operating in favor of the party having the ultimate persuasion requires the opposing party to go forward with evidence rebutting the presumption, it does not shift the original burden of persuasion.") (footnote omitted); Idaho, *Bongiovi v. Jamison*, 718 P.2d 1172, 1176 (Idaho 1986) ("Rules 301 of the Federal Rules of Evidence and the Idaho Rules of Evidence adopt the Thayer-Wigmore approach[.]"); Illinois, *In re Estate of Henke*, 561 N.E.2d 314, 317 (Ill. App. Ct. 1990) ("Illinois follows Thayer's 'bursting bubble' theory of presumptions."); Kentucky, *Rentschler v. Lewis*, 33 S.W.3d 518, 520 (Ky. 2000) ("The existence of a presumption serves only to require the party against whom it operates to introduce evidence to rebut it."); Maine, *Lyle v. Mangar*, 36 A.3d 867, 872 (Me. 2011) ("A presumption serves to shift the burden of going forward with evidence to the party against whom the presumption lies.") (citation omitted); and Michigan, *Widmayer v. Leonard*, 373 N.W.2d 538, 542 (Mich. 1985) ("Michigan adopted *MRE 301*, the language of which parallels *FRE 301*, which was in essence, an adoption of the Thayer theory regarding the use of civil presumptions.").

The jurisdictions that have adopted the Morgan theory include, among others: Delaware, *Oberly v. Howard Hughes Medical Inst.*, 472 A.2d 366, 388 (Del. Ch. 1984) ("[U]nder Delaware law, a presumption does not merely shift to the other party the burden of going forward with evidence . . . . [O]ur Rule 301 imposes upon the party against whom the presumption is directed 'the burden of proving' that the nonexistence of the presumed fact is more probable than its existence."); Louisiana, *Richards v. St. Bernard Parish Gov't*, 91 So. 3d 524, 532 (La. Ct. App. 2012) ("The Commentators conclude that Chapter 3 of the Evidence Code (La. C.E. arts. 301-308)[,] in keeping with prior Louisiana caselaw, adopts the Morgan approach affording a somewhat stronger weight to presumptions.") (internal quotation marks and citation omitted); Nevada, *Yeager v. Harrah's Club*, 897 P.2d 1093, 1095 (Nev. 1995) ("A presumption not only fixes the burden of going forward with evidence, but it also shifts the burden of proof.") (citing NRS 47.180(1)); North Dakota, *Sunderland v. North Dakota Workmen's Comp. Bureau*, 370 N.W.2d 549, 552 (N.D. 1985) ("In North Dakota, presumptions operate to shift both the burden of going forward with evidence and the burden of persuasion."); Oregon, *Lawrence v. Clackamas County*, 992 P.2d 933, 935 (Or. Ct. App. 1999) ("[W]hen the legislature uses the term 'rebuttable presumption,' it refers to the Morgan view of presumptions unless it specifically states otherwise."); and Wisconsin, *In re Kyles S.-G.*, 533 N.W.2d 794, 797 (Wis. 1995) ("[Wis. Stat. § 903.01] recognizes that once established, a presumption shifts the burden of production and persuasion to the party opposing the presumption.") (citation omitted).

[11] The jurisdictions that have adopted principles from both theories include, among others: Indiana, *Schultz v. Ford Motor Co.*, 857 N.E.2d 977, 984 (Ind. 2006) ("Indiana Evidence Rule 301 . . . clearly adopts the Thayer approach of allocating only the burden of production, not burden of persuasion . . . . But Rule 301 clearly rejected a pure Thayer 'bursting bubble' approach and changed prior Indiana law when [it] added the new second sentence: 'A presumption

also jurisdictions that determine which theory to adopt based on the reason(s) for creating the presumption.[12] One such reason highlighted by some jurisdictions is a presumption created to further social policy. *See, e.g.*, *Scott v. Mershon*, 576 A.2d 67, 69 (Pa. Super. Ct. 1990) ("One reason for [the] creation of a presumption is to further a preferred social policy.") (citations omitted); *Swain v. Neeld*, 145 A.2d 320, 323 (N.J. 1958) ("[There are] four bases for the erection of a presumption . . . . (4) the fostering of social or economic policy.") (citation omitted).

In this latter regard, the Morgan theory is often adopted when the legislative intent underlying the creation of the presumption is to further social policy.[13] For example, in *Virginia*

---

shall have continuing effect even though contrary evidence is received.'") (quoting IND. R. EVID. 301); Maryland, *Cooper v. Singleton*, 94 A.3d 250, 262 (Md. Ct. Spec. App. 2014) ("[A] presumption in a Maryland civil case is neither a classic 'Thayer-Wigmore bursting bubble' presumption nor a 'Morgan-Type' presumption, but a modified procedural device lying between those two extremes."); and South Dakota, *In re Estate of Dimond*, 759 N.W.2d 534, 537 (S.D. 2008) ("[T]he words 'substantial credible evidence' in *SDCL 19-11-1* (*Rule 301*) were ostensibly added to meet the criticism of [Federal Rule of Evidence 301] that a scintilla of evidence—enough merely to burst a bubble—is all that is required to overcome a presumption.") (footnote omitted).

[12] The jurisdictions that determine which theory to adopt based on the reason for creating the presumption include, among others: Arizona, *Golonka v. GMC*, 65 P.3d 956, 972 (Ariz. Ct. App. 2003) ("[Arizona] adhere[s] to the generally held view that a presumption serves to shift the burden of producing evidence, unless the substantive common law or legislative enactment giving rise to the presumption compels a conclusion that the presumption shifts the burden of persuasion to the party opposing the presumed fact."); Florida, *Universal Ins. Co. v. Warfel*, 82 So. 3d 47, 58 (Fla. 2012) ("[I]n the absence of express language in the statute, a clear intent to advance a particular social policy, or a specific reference to a different approach, the Thayer-Wigmore rule, codified under Florida law *section* 90.303, governs in Florida."); New Jersey, *Swain v. Neeld*, 145 A.2d 320, 323 (N.J. 1958) ("The effect to be afforded a presumption must ultimately lie in the reasons for its creation."); Pennsylvania, *Scott v. Mershon*, 576 A.2d 67, 69 (Pa. Super. Ct. 1990) ("[T]he force and effect of all presumptions is not the same but rather depends upon the reasons for which courts and legislatures have created a particular presumption.") (citing *Watkins v. Prudential Ins. Co.*, 173 A. 644 (Pa. 1934)); Texas, *Wright v. Ford Motor Co.*, 508 F.3d 263, 273 n.9 (5th Cir. 2007) (applying Texas law) ("The drafters of the Texas rules [of evidence] were forced to choose between the only two realistic alternatives: either opt for one approach to presumptions to the exclusion of the others or leave the matter to the courts for a case-by-case consideration. They chose the latter.") (citation omitted); and Washington, *In re Estate of Langeland*, 312 P.3d 657, 662 (Wash. Ct. App. 2013) ("Washington has not adopted an evidence rule addressing presumptions. Washington cases have adopted individual presumptions for different reasons, with policies of varying strength behind them. Some shift the burden of production, while others shift the burden of persuasion.").

[13] The jurisdictions that adopt the Morgan theory when the legislature creates a presumption to further social policy include, among others: California, CAL. EVID. CODE § 605 ("A presumption affecting the burden of proof is a presumption established to implement some public policy . . . ."); Hawaii, H.R.E. 304 ("A presumption established to implement a public policy . . . imposes on the party against whom it is directed the burden of [persuasion]."); New Hampshire, N.H. EVID. R. 301, Comment ("New Hampshire, like most other jurisdictions, . . . turns to the Morgan theory when the legislature or the judiciary seeks to attain or maintain an important substantive policy."); Rhode Island, R.I. R. EVID. ART. III, Rule 305 ("A presumption affecting the burden of persuasion is a presumption established to implement some public policy . . . ."); and Vermont, V.R.E. 301, Comment ("Some presumptions []

*Birth-Related Neurological Injury Compensation Program v. Young*, the Court of Appeals of Virginia made specific reference to this fact, stating:

> The law of presumptions in Virginia reflects both the Thayer theory and the Morgan theory. [T]here is no single rule governing the effect of all presumptions; instead, the effect of a particular presumption on the burdens of production and persuasion depends upon the purposes underlying the creation of the presumption. The purpose of [the presumption in this case] is to implement a social policy of providing compensation to families whose neonates suffer birth-related neurological injuries. To give full effect to this policy, the presumption must be clothed with a force consistent with the underlying legislative intent. Application of the Thayer theory would be inconsistent with the policy objectives of [the statute]. The presumption set forth in [the statute] must be construed according to the Morgan theory.

541 S.E.2d 298, 301 (Va. Ct. App. 2001) (internal quotation marks and citations omitted); *see also Byous v. Mo. Local Gov't Emps. Ret. Sys. Bd. of Trs.*, 157 S.W.3d 740, 746 (Mo. Ct. App. 2005) (adopting the Morgan theory while noting that "[t]he legislature clearly intended to aid firefighters in their claims for disability benefits under [the statute] by creating this presumption in their favor.").

For present purposes, this Court need only decide the legal effect of the type of presumption embodied in the WDA.[14] By creating a presumption in favor of employees, the Virgin Islands Legislature's apparent purpose was to aid wrongfully discharged employees in their claims against employers. *See The Village*, 39 V.I. at 114 ("Although the Virgin Islands Wrongful Discharge Act does not itself allocate the burden of proof, it does impose a

---

reflect social policy, favoring or disfavoring a particular position. . . . The exception in Rule 301(a) for presumptions created by law . . . is intended to allow the operation of particular common-law or statutory presumptions that shift the burden of persuasion to the opponent.").

[14] Because this Court is predicting how the Supreme Court of the Virgin Islands would rule on this issue of local law, its ruling herein is no broader than necessary to address the matter before it. As discussed below, this Court has concluded that the presumption in the WDA was created to further a social policy. Accordingly, this Court's ruling is focused on the legal effect of this type of presumption. Whether the Morgan or Thayer theory, or some combination thereof, should be adopted for other types of presumptions under Virgin Islands law need not be decided for purposes of resolving the instant matter, and will therefore be left unresolved by the Court's ruling herein.

presumption which benefits wrongful discharge claimants.") (citation omitted). As discussed earlier, the legislative concerns underlying the enactment of the statute stemmed from a perceived problem with wrongful discharge in the Virgin Islands, and included, *inter alia*, "set[ting] up the procedural vehicle so that employees that are abused and otherwise kicked around by their employers have some recourse in the employment industry." *Diaz*, 23 V.I. at 351 (Comment of Sen. Adelbert Bryan). Thus, the circumscribed bases for permissible discharges, together with the presumption of wrongful discharge, reflect the furtherance of a social policy designed to curb perceived abuses and protect employees from unjustified terminations.

Based on the *Banks* analysis, this Court concludes that the soundest rule for the Virgin Islands is the adoption of the Morgan theory in instances where the presumption was created to further a particular social policy. *See Cunningham*, 525 A.2d at 717 ("In deciding which of the two presumption theories should govern the meaning of the presumption contained in [the statute], we must consider whether the statute reflects a significant policy objective."). It has been aptly stated that "[i]n order to give full effect to the legislative intent, the presumption must be endowed with a force consistent with the legislative concerns underlying the presumption." *Id*. at 718. As previously noted, the Thayer theory has been deemed to substantially undervalue the effect of presumptions, especially presumptions—as in the WDA—that advance a significant social policy. *See id*. at 717. Thus, to apply the Thayer theory to such presumptions "simply would not be consistent with [their] policy objective[s]." *Id.* at 718.

In sum, the Court finds that the Morgan theory, which shifts the burden of persuasion to the party against whom the presumption operates, is applicable in the Virgin Islands to presumptions established to further a particular social policy objective. Accordingly, under the

WDA—which embodies such a presumption—the burden of persuasion shifts to the employer once a *prima facie* case is made by the employee.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that, under the WDA, the initial burden of production rests with Plaintiff to establish a *prima facie* case of wrongful discharge, and the burden of persuasion then rests with Defendant to establish by a preponderance of the evidence that Plaintiff was discharged for one of the nine reasons set forth in Section 76(a) of the WDA.

An Order to this effect was previously issued. (Dkt. No. 133).

Date:   November 13, 2014

                                                        _____/s/_____
                                                        WILMA A. LEWIS
                                                        Chief Judge